**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   NC-15-1177-TaJuKi |
| ) | |
| RODOLFO VELASQUEZ, ) | Bk. No.   3:14-bk-30344 |
| ) | |
| Debtor. ) | |
| _____) | |
| ) | |
| RODOLFO VELASQUEZ, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| BANK OF AMERICA N.A., ) | |
| ) | |
| Appellee. ) | |
| _____) | |

Argued and Submitted on July 28, 2016
at San Francisco, California

Filed – August 9, 2016

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Dennis Montali, Bankruptcy Judge, Presiding

Appearances:   Rodolfo Velasquez argued pro se; Andrea McDonald Hicks of Bryan Cave, LLP argued for Appellee.

Before:   TAYLOR, JURY, and KIRSCHER, Bankruptcy Judges.

[*]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

**INTRODUCTION**

Chapter 13[1] debtor Rodolfo Velasquez appeals from an order overruling his objection to Bank of America's proof of claim. We AFFIRM.

**FACTS[2]**

The Debtor scheduled an interest in real property located in San Francisco, California (the "Property"). Bank of America, N.A. holds an obligation secured by a lien against the Property.

Bank of America filed a proof of its secured claim evidencing $35,732.30 in arrearages as of the petition date. The arrearages consisted of $34,379.24 in prepetition delinquent payments and $1,353.06 in prepetition administrative fees. The $34,379.24 of delinquent payments, in turn, consisted of 34 monthly payments: 19 payments of $960.48; 14 payments of $1,074.63; and 1 payment of $1,085.30.

In response, the Debtor filed a "Motion to Deny Bank of America's Proof of Claim Filed in the Amount of $35,732.30." He broadly questioned the amount of the arrearage and even asserted that the bank owed him money as a result of overpayment. More specifically, he challenged the number of allegedly delinquent payments and asserted that Bank of America had improperly

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

2

increased his monthly payment beyond $960.48, the fixed payment amount set forth in his promissory note. He less relevantly pointed out that he made a large postpetition payment of $26,000 and asserted that this cured any default.

Bank of America responded that its proof of claim, signed and executed in accordance with the Federal Rules of Bankruptcy Procedure, was prima facie evidence as to the legitimacy and amount of the claim. It also acknowledged that the Debtor made payments to the bank prepetition, explained that it applied payments to cure the most remote payment default, and provided a rudimentary spreadsheet regarding the Debtor's escrow statement and calculation of payments.

At a continued hearing on the matter, both the bankruptcy court and the Debtor professed confusion with the documents submitted by Bank of America in support of its claim. The attorney who appeared on behalf of the bank eventually explained the mechanics of a suspense account and how it would have applied to the Debtor's account. The bankruptcy court then attempted to explain the concept to the pro se Debtor; the Debtor's concerns were not eliminated.

The bankruptcy court then suggested that the parties participate in a third-party mediation. Bank of America tentatively agreed, and the bankruptcy court cautioned the Debtor to set aside his anger and to cooperate with the bank. The bankruptcy court asked the Debtor whether he could reconstruct from his records every payment made to the bank beginning from the inception of his loan; the Debtor responded that he could. It, thus, instructed the Debtor to turn over his

3

documentation of payments to the bank's counsel within two weeks; the Debtor agreed. The bankruptcy court continued the matter.

Bank of America subsequently filed a supplemental declaration by Henry Longres, an Assistant Vice-President at the bank. Longres attached a spreadsheet, that he attested he personally prepared, detailing the payments received from the Debtor dating retrospectively from September 20, 2013 - the most recent payment received prepetition - and how the payments were applied to the several years of default. He explained that payments received by the bank falling short of a full monthly payment amount were placed in a suspense account. Once sufficient funds were accumulated in the account, the bank made a monthly payment.

He further explained that payments were made on account of the most distant default. Thus, the bank applied payments received from the Debtor in 2013 against defaulted payments in 2011 or earlier.

Finally, Longres explained that the Debtor's monthly payment of principal and interest was always $960.47 and that the monthly payment increased in January 2013 to $1,047.63 in order to fund a property tax escrow account, required because the Debtor failed to pay property taxes.

Counsel for Bank of America also filed declarations, stating that they were not successful in scheduling a mediation on account of counsel's unavailability one week and the Debtor's general lack of cooperation. One of the attorneys attached several emails between counsel and the Debtor evidencing his

4

alleged lack of cooperation.

The Debtor responded to the declarations and objected to several of the statements therein; in particular, he generally contested the calculations of his debt owed and the arrearages. He also asserted that he was not uncooperative and laid blame for the scheduling issue on counsel for Bank of America, asserting erroneously that the bank's counsel could not meet within two weeks as instructed by the bankruptcy court at the prior hearing. He provided no evidence that he provided the full accounting of his payments to Bank of America as required by the bankruptcy court.

At the final hearing, the bankruptcy court expressed disappointment that the Debtor had not provided documentation of payments to Bank of America as he had promised to do and that Debtor was uncooperative in scheduling and attending a mediation with the bank. It found that Bank of America had complied with its instructions, while the Debtor had not. The bankruptcy court ultimately found that it was satisfied with Bank of America's evidence and that it established that its claim for arrearages was valid. Thus, it overruled the Debtor's objections to the proof of claim.

Following entry of the bankruptcy court's order overruling the Debtor's objection, the Debtor timely appealed.

///

///

///

///

///

5

**JURISDICTION[3]**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (B). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE[4]**

Whether the bankruptcy court erred in overruling the Debtor's objection to Bank of America's proof of claim.

**STANDARDS OF REVIEW**

In the context of claims objections, we review the bankruptcy court's legal conclusions de novo and its factual findings for clear error. See Pierce v. Carson (In re Rader), 488 B.R. 406, 409 (9th Cir. BAP 2013) ("An order overruling a claim objection can raise legal issues (such as the proper construction of statutes and rules) which we review de novo, as well as factual issues (such as whether the facts establish compliance with particular statutes or rules), which we review for clear error." (citation omitted)). Whether an evidentiary presumption has been rebutted is a question of fact reviewed for clear error. Litton Loan Servicing, LP v. Garvida

---

[3] In its brief, Bank of America briefly argues that the appeal is moot given that the bankruptcy court dismissed the chapter 13 case. We disagree. The order dismissing the case is concurrently on appeal and a final determination has not been made. More importantly, the bankruptcy court's ruling on the Debtor's objection to claim could have a preclusive effect in other litigation between the parties. See Siegel v. Fed. Home Loan Mortg. Corp., 143 F.3d 525, 528-31 (9th Cir. 1998). We conclude that the appeal is not moot.

[4] The Debtor identifies ten issues on appeal. The majority of these are duplicative, nonsensical, irrelevant, or outside the scope of this appeal.

6

(In re Garvida), 347 B.R. 697, 703 (9th BAP Cir. 2006).

Factual findings are clearly erroneous if illogical, implausible, or without support in inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

We may affirm the decision of the bankruptcy court on any basis supported by the record. See Hooks v. Kitsap Tenant Support Servs., Inc., 816 F.3d 550, 554 (9th Cir. 2016).

### DISCUSSION

"A proof of claim executed and filed in accordance with [the Federal Rules of Bankruptcy Procedure] shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). This evidentiary presumption is a rebuttable one. In re Garvida, 347 B.R. at 706. "The mechanics of what it takes to rebut the Rule 3001(f) presumption are driven by the nature of the presumption as 'prima facie' evidence of the claim's validity and amount." Id. at 706-07. Thus, a properly executed proof of claim constitutes prima facie evidence, and "[o]ne rebuts evidence with counter-evidence." Id.

Here, the record shows that Bank of America executed and filed the proof of claim in accordance with the Federal Rules of Bankruptcy Procedure. Thus, its proof of claim provided prima facie evidence as to the validity and amount of its claim. The burden then shifted to the Debtor to supply sufficient counter-evidence. The bankruptcy court implicitly found that he did not do so. On this record, its finding was not clearly erroneous.

The Debtor's only relevant counter-evidence were copies of

7

checks made payable to Bank of America over the course of a two-year period preceding the chapter 13 filing and a short time thereafter. The Debtor argues that these checks prove that he made payments to Bank of America that would negate its claim of arrears.

First, there is no dispute that the Debtor was in default as of the petition date. His postpetition payment of $26,000 evidences his awareness that he owed the bank money beyond his required postpetition monthly payments. Moreover, although Bank of America filed its proof of claim several months after the case was commenced, the document correctly calculated the arrearages as of the petition date. Thus, while the Debtor's large postpetition payment decreased the arrearages that he owed to Bank of America, the proof of claim remained valid and accurate because it evidenced the amount owed when the Debtor commenced his chapter 13 case.

Second, Bank of America supplied additional evidence supporting its proof of claim and accounting for the limited payment evidence supplied by the Debtor. The supplemental declaration of Henry Longres authenticated detailed spreadsheets showing the receipt and application of payments preceding and immediately following the Debtor's bankruptcy filing. The spreadsheets accounted for the payment evidence supplied by the Debtor and established that the Debtor was in arrears for the June, 2011 payment as of the petition date. Longres also explained how Bank of America used a suspense account to hold partial payments until there were sufficient funds to clear a past due payment. He finally explained that the monthly payment

8

increased because the Debtor failed to pay real property taxes.

Ultimately, the bankruptcy court found that Bank of America's evidence adequately supported its proof of claim and fully addressed the limited counter-evidence supplied by Debtor. On this record, we cannot say that its findings were clearly erroneous.

On appeal, the Debtor argues that an evidentiary hearing or a trial is warranted, "where more time is available to scrutinize the evidences [sic] and to make sure that the money is owed." But the record shows that, in effect, the bankruptcy court granted a summary adjudication in favor of Bank of America. The bankruptcy court may sua sponte grant a summary adjudication in the absence of a genuine dispute of material fact and where the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a) & (f)(3) (incorporated into bankruptcy proceedings by Rules 7056 and 9014); Arce v. Douglas, 793 F.3d 968, 976 (9th Cir. 2015) (federal court may grant summary judgment sua sponte where the party against which summary judgment is granted has a "full and fair opportunity to ventilate the issues.") (citation omitted).

Here, the Debtor advanced no evidence that, even if assumed as true, would have justified a trial. His generalized allegations of fraud against Bank of America were insufficient, and he had a full and fair opportunity to ventilate the issue of whether he owed the arrearages as claimed by Bank of America. Again, his payment evidence was not disputed by Bank of America; instead, it accounted for these payments and established that its petition date arrearage calculation was accurate

9

notwithstanding their receipt. As the bankruptcy court concluded, there remained no genuine issue of material dispute that justified a trial.

**CONCLUSION**

Based on the foregoing, we AFFIRM.